**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| ROSHEEN SMITH, Petitioner, | ) | |
| v. | ) | No. 2:10-cv-128-JMS-WGH |
| RICHARD BROWN, Respondent.[1] | ) | |

## Entry Discussing Petition for Writ of Habeas Corpus and Denying Certificate of Appealability

For the reasons explained in this Entry, the petition of Rosheen Smith for a writ of habeas corpus must be **denied** and the action dismissed with prejudice. In addition, the court finds that a certificate of appealability should not issue.

## I. The Petition for Writ of Habeas Corpus

### A. Applicable Law

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, became effective on April 24, 1996, and governs the habeas petition in this case because Smith filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under the AEDPA, a federal court may not grant habeas relief unless the state court's adjudication of a claim resulted in a decision that (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). The Court of Appeals has reviewed the standard to be applied here:

[1] The petitioner's custodian, named in his official capacity only, is **substituted** as the sole and proper respondent.

> Plainly stated, these are demanding standards. This Court has recognized that federal courts should deny a habeas corpus petition so long as the state court took the constitutional standard "seriously and produce[d] an answer within the range of defensible positions." *Mendiola v. Schomig*, 224 F.3d 589, 591–92 (7th Cir. 2000).

*Atkins v. Zenk*, 2012 667 F.3d 939, 943-44 (7th Cir. 2012). Based on the above standard, federal habeas relief is barred for any claim adjudicated on the merits in state court "unless one of the exceptions listed in 28 U.S.C. § 2254(d) obtains." *Premo v. Moore*, 131 S. Ct. 733, 739 (2011).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet).

**B. Background**

Smith was convicted after trial by jury in Elkhart County Circuit Court of Burglary Resulting in Bodily Injury, Battery with a Deadly Weapon, Criminal Confinement with a Deadly Weapon, and Sexual Battery with a Deadly Weapon. His convictions were affirmed on direct appeal in *Smith v. State*, No. 20A03–0207–CR–224 (Ind.Ct.App. May 16, 2003)(*Smith I*). The trial court's denial of Smith's petition for post-conviction relief was affirmed on appeal in *Smith v. State*, 2010 WL 334835 (Ind.Ct.App. 2010)(unpublished disposition)(*Smith II*).

The underlying facts of Smith's conviction were summarized in *Smith II*. At approximately 12:30 a.m. on August 13, 2001, Smith approached Linda Minton as she was outside with her two dogs. Smith engaged Minton in a brief conversation, during which he told her he had been out jogging and requested a glass of water. Minton went inside her apartment to obtain a glass of water for Smith, closing the screen door behind her after she entered. Minton went into the kitchen and poured a glass of water. As she turned to take it out to Smith, she found Smith standing there in her apartment.

Smith had not been invited inside. He grabbed Minton around the neck, picked up a pair of scissors from the kitchen table, jabbed them into her right side, and forced her into a chair in the living room. He then initiated sexual activity, forcing Minton to touch his penis. Minton tried to escape while Smith went to turn the lights off. Smith caught her, and a struggle ensued. Smith overpowered Minton and forced

her back into the chair. Smith started to expose his penis again but then abruptly changed his mind and left.

Police were called, a description of Minton's attacker was given, and at approximately 3:00 a.m., Officer Daniel Young observed Smith walking in the general vicinity of Minton's apartment. With the exception that he had on different clothing than described by Minton, Smith matched Minton's earlier description. Smith consented to have the victim look at him to clear him of suspicion. Officer Campos brought Minton over to determine whether she could identify Smith as her attacker. Minton informed Officer Campos that Smith looked like the person who attacked her, but she noted that he was wearing different clothing. In addition to the show-up, the Goshen Police also asked Minton to attempt to identify her attacker from a photo array later that day. Minton selected Smith's photo from the array.

Following Minton's identification of Smith as her attacker at the show-up, the police asked Smith where he lived. Smith informed the officers that he had been staying with an ex-girlfriend, Tricia Simons, at her apartment and took them there. When the police arrived at the apartment, Tricia's daughter answered the door. Tricia's daughter and her friend had been in the apartment since about ten or eleven that evening. The two told police that Smith had left the apartment right after getting off the phone with Tricia who had called to check-in during her break, which was from 12–12:30 a.m., and that when Smith left he was wearing a red tank top and red shorts.

The police contacted Tricia at work, after which she left work and returned to her apartment. Tricia went to her bedroom and located a red tank top and red shorts, unfolded and stuffed in her top drawer; however, Tricia told the police that she had laundered these items earlier in the day, folded them, and placed them in her second drawer. Additionally, Tricia reported that the garments she removed from the top drawer smelled of sweat. Subsequently, the police obtained a search warrant, seized the clothes, and recovered a pair of scissors in the bedroom wastebasket. Tricia informed the police that the scissors were not hers. Later, Minton identified these scissors as the ones that her attacker had taken from her kitchen table.

Smith was charged with the offenses noted above and, as mentioned, he was found guilty of each. Following his convictions, Smith filed a motion to correct error, alleging newly discovered evidence that the prosecutor suppressed evidence favorable to the defense. In particular, Smith alleged that the prosecutor and lead detective on the case pointed out Smith to Minton on the morning of the trial and indicated that he was her attacker. In supported of these allegations, Smith tendered affidavits from three of his friends. The trial court denied this motion.

In *Smith I*, the Indiana Court of Appeals affirmed after concluding that (1) the trial court did not err in denying Smith's motion to correct error or in permitting

evidence regarding a photo array, and (2) the evidence was sufficient to satisfy the breaking element of the burglary charge. In *Smith II*, Smith contended that his trial counsel was ineffective because counsel failed to seek suppression of all of the evidence derived from the investigatory stop and because counsel failed to request that DNA testing be performed on the clothing and scissors recovered from Smith's ex-girlfriend's home. These claims were rejected.

## II. Discussion

Smith asserts four grounds for relief. First, exculpatory evidence was suppressed. Second, the trial court improperly admitted pretrial and in-court identifications of Smith. Third, the evidence was insufficient to support Smith's conviction for burglary. Finally, Smith's trial counsel rendered ineffective assistance.

*Suppression of Exculpatory Evidence*

Smith contends that the trial court erred when it denied his motion to correct errors based on newly discovered evidence that the prosecutor and the lead detective in his case pointed out Smith to Linda Minton on the morning of the trial and indicated that he was her attacker. The Indiana Court of Appeals recognized that the controlling law from the Supreme Court is established by *Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). AEvidence is material if there exists a reasonable probability that its disclosure to the defense would have changed the result of the trial.@ *United States v. Bland*, 517 F.3d 930, 933-34 (7th Cir. 2008).

The Indiana Court of Appeals reviewed the evidence of the incident and issued the following analysis:

> While we recognize that Smith's newly discovered evidence could have been used to impeach Minton's in-court identification of Smith as her attacker, the in-court identification is not the only evidence linking Smith to the crimes with which he was charged. First, Minton identified Smith within a few hours of the attack and later identified him as her attacker by selecting his photo from an array comprised of five other black males. Additionally, police found physical evidence in the apartment where Smith was staying that corroborated Minton's identification, specifically the red tank top and red shorts he was wearing during the attack and the scissors that were removed from Minton's apartment. Further, two witnesses testified that Smith left the apartment where he was staying shortly before the attack dressed in a

> red tank top and red shorts. Based on this evidence, it is not against the logic and effect of the evidence for the trial court to determine that there is not a reasonable probability that Smith's new evidence would have changed the outcome of the proceedings.

*Smith I,* No. 20A03-0207-CR-224, at p.7. Thus, this analysis finds that there was no *Brady* violation because the elements of materiality and prejudice were absent. In reaching this conclusion, the Indiana Court of Appeals "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). Smith has not rebutted by clear and convincing evidence the presumed correctness of the facts on which the Indiana Court of Appeals' analysis is based. *See Sprosty v. Buchler,* 79 F.3d 635, 643 (7th Cir. 1996).

Because this court cannot find that the Indiana Court of Appeals "unreasonably applie[d] [the *Brady* standard] to the facts of the case," Smith's *Brady* claim does not support the award of habeas corpus relief. *Murrell v. Frank,* 332 F.3d 1102, 1111 (7th Cir. 2003)*(citing Bell v. Cone,* 535 U.S. 685, 694 (2002)).

*Admission of Pretrial Identifications*

Smith argues that the trial court improperly admitted Minton's pretrial and in-court identifications of Smith because the pretrial procedures were unduly suggestive in violation of due process and his right to a fair trial.

A petitioner asserting that an identification procedure was unconstitutional must initially show that the procedure was unduly suggestive. *Neil v. Biggers,* 409 U.S. 188, 198 (1972); *Gregory-Bey v. Hanks,* 332 F.3d 1036, 1045 (7th Cir. 2003). If that burden is met, "the court must then determine, under the 'totality of the circumstances,' whether the identification was sufficiently reliable to prevent misidentification," *id.* at 1045, keeping in mind "the corrupting effect of the suggestive identification itself," *Manson v. Brathwaite,* 432 U.S. 98, 114 (1977). Reliability is based on factors which include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of h[er] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson,* 432 U.S. at 114; *see Biggers,* 409 U.S. at 199-200. The Indiana Court of Appeals recognized and reasonably applied this same standard in *Smith I,* No. 20A03-0207-CR-224 at p. 8.

The Court of Appeals found:

> Minton made three identifications of Smith as her attacker: the show-up, the photo array, and the in-court identification. Smith argues

that because the first identification, the show-up, was impermissibly suggestive, all other identifications were tainted and inadmissible.

. . .

Here, Minton had ample opportunity to view her attacker both before and during the attack. Minton told police that she had seen Smith before in the neighborhood. Also, Minton and Smith engaged in a conversation outside of her apartment immediately before the attack. Further opportunity for observation of her attacker occurred as he forced Minton to watch him as he masturbated in a well-lit room. Indeed, the essence of the sexual battery involved Minton's focused attention upon her attacker. Immediately after her attacker left her apartment, Minton reported the incident to the police. In particular, she described her attacker as a black male with a shaved head who was approximately five feet, six inches to five feet, eight inches tall. Smith is a black male with a shaved head and stands roughly five feet, five inches tall. She also informed the police that her attacker was wearing a red tank top and red shorts. Within about two and one-half hours of the attack, Minton identified Smith as her attacker at the show-up noting that he was now wearing different clothing. However, a red tank top and red shorts, along with her missing scissors, were later recovered from the apartment at which Smith was staying. Based on the totality of the circumstances, the show-up confrontation bears indicia of reliability, and we conclude that the trial court did not abuse its discretion by permitting identification evidence.

Smith also questions the trial court's admission of evidence regarding Minton's identification of Smith as her attacker from a photo array. Specifically, Smith contends that Minton's selection of Smith from the photo array was tainted by the earlier show-up and because someone other than Minton circled the photo of Smith after she indicated he was her attacker. In assessing the admissibility of the photo array, we determine whether it was unduly suggestive given the totality of the circumstances. As noted above, Minton had ample opportunity to observe her attacker and her identification was consistent and corroborated by other evidence. While Minton had observed Smith in the show-up shortly after the attack, in light of the fact that we found the show-up to be reliable, we do not find that the photo array was tainted by the earlier show-up. . . .

Smith also intimates that the photo array was unduly suggestive because "the police showed [Minton] the photo line up and she had to identify which one was him." . . . The record reveals no evidence that

> Minton was directed that she had to pick one of the six men in the photo array as her attacker, as Smith suggests. What the record does reveal, however, is that printed directly on the photo array is the following advisement:
>
> **WITNESS: PLEASE READ THESE INSTRUCTIONS CAREFULLY**
>
> . . . .
>
> 2. Do not feel you have to pick anyone out of the line-up; do so only if the accused is one of the photos.
>
> . . . .
>
> 4. After looking at all of the photo line-up **IF** you do not see anyone you recognize tell the officer. **TAKE YOUR TIME.**
>
> Appellant's App. p. 95. Consequently, we find this argument unavailing. For these reasons, we conclude that the trial court did not err in permitting evidence regarding the photo array.
>
> Moreover, even if the trial court had erred in the admission of the identification evidence, any error would have been harmless in light of the wealth of other evidence linking Smith to the attack.

*Smith I*, No. 20A03-0207-CR-224, at pp. 8-11. After noting the pertinent circumstances and applying the test established by controlling law from the Supreme Court, the Indiana Court of Appeals reasonably concluded that the identification was not tainted by unduly suggestive identification procedures which led to an unreliable identification that undermined the fairness of his trial. Thus, this court is unable to say that the Indiana Court of Appeals decision on this point was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Burglary Conviction*

States are free, within broad limits, to define the elements of a crime. *Eaglin v. Welborn*, 57 F.3d 496, 500 (7th Cir. 1995) (*en banc*). Once a state has done so, however, Athe Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.@ *In re Winship*, 397 U.S. 358, 364 (1970).

A federal court evaluating the sufficiency of evidence supporting a conviction must construe that evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The relevant inquiry for a federal habeas court reviewing a sufficiency of evidence claim is Awhether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.@ *Jackson*, 443 U.S. at 319; *Brumley v. Detella*, 83 F.3d 856, 862 (7th Cir. 1996). A petitioner is only Aentitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.@ *Cabrera v. Hinsley*, 324 F.3d 527, 533 (7th Cir. 2003) (citing *Jackson*, 443 U.S. at 324). Under the AEDPA, federal review of a challenge to the sufficiency of the evidence "turns on whether the state court provided fair process and engaged in reasoned, good-faith decision-making when applying *Jackson's* 'no rational trier of fact' test." *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1997), *vacated on other grounds*, *Gomez v. DeTella*, 522 U.S. 801 (1997).

Smith argues that there was insufficient evidence to support his conviction for burglary because there was insufficient evidence of a “breaking” such as required to sustain a conviction for burglary.

The Indiana Court of Appeals held that burglary occurs when a person breaks and enters the building or structure of another person with the intent to commit a felony therein. IND. CODE ' 35-43-2-1. Opening an unlocked door or pushing a door that is slightly ajar constitutes a breaking. *Davis v. State*, 770 N.E.2d 319, 322 (Ind. 2002). Circumstantial evidence alone can prove the occurrence of a breaking. *Payne v. State*, 777 N.E.2d 63, 66 (Ind.Ct.App. 2002). Here, the Indiana Court of Appeals found that:

> Minton testified that when she went into her apartment to get a glass of water for Smith, she closed the screen door behind her. Minton did not invite Smith inside. When she turned around from getting the water, Smith was standing behind her inside the apartment. From this testimony one could infer that force was used to gain entry without the victim’s permission. Thus, the evidence is sufficient to satisfy the breaking element of burglary.

*Smith I*, No. 20A03-0207-CR-224, at pp. 11-12.

The Indiana Court of Appeals= discussion of the evidence recognized the *Jackson* standard and provided Smith and the State of Indiana with fair process and constituted reasoned, good-faith decision-making when applying *Jackson's* Ano

rational trier of fact@ test. This determination that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt did not run afoul of the AEDPA standard as expressed in 28 U.S.C. ' 2254(d)(1). Hence, Smith is not entitled to relief based on this claim.

*Assistance of Counsel*

Smith's last habeas claim is that he was denied the effective assistance of counsel at trial. Although this is a single claim, *Pole v. Randolph,* 570 F.3d 922, 934 (7th Cir. 2009) (citing *Peoples v. United States,* 403 F.3d 844, 848 (7th Cir. 2005)), his petition provides two specifications of attorney ineffectiveness. The first specification is that his attorney was ineffective by failing to seek suppression of all evidence that was derived from the investigatory stop. The second specification is that his attorney was ineffective by failing to have DNA testing done on the clothing and scissors recovered from the home of Tricia Simons.

The Sixth Amendment guarantees the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686.

> Under *Strickland,* [a defendant] must prove two elements: (1) that his trial counsel's performance fell below "an objective standard of reasonableness," *id.* at 688; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. For the first element, this court's review of the attorney's performance is "highly deferential" and "reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. For the second element, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

*Daniels v. Knight,* 476 F.3d 426, 433-34 (7th Cir. 2007)(omitting parallel citations).

The foregoing outlines the straightforward features of *Strickland*=s two-prong test. In the context of a case such as Smith presents, however, the AEDPA raises the bar. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal and end citations omitted). When the AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance,* 129 S. Ct. 1411, 1420 (2009)(internal citations and quotations omitted).

Smith's claim of ineffective assistance of counsel was presented in *Smith I.* The Indiana Court of Appeals recognized the *Strickland* standard. *Smith II,* 2010 WL 334835, at *3.

Regarding the first specification of attorney ineffectiveness, the Indiana Court of Appeals found that the "facts indicate that Smith consented to the investigatory stop. Moreover, even if Smith did not consent to the investigatory stop, the facts and circumstances surrounding the stop indicate that Officer Young had reasonable suspicion to stop Smith, who matched the general description of the attacker and was seen walking in the general area within hours of the attack. Thus, we conclude that Smith has failed to show that the investigatory stop was improper and that any motion to suppress the evidence derived from the investigatory stop would be successful." *Smith II,* 2010 WL 334835, at *5. The Indiana Court of Appeals reasonably determined that a motion to suppress would not have succeeded under these circumstances.

Smith also argues that his trial counsel was ineffective for failing to have DNA tests performed upon the clothing and scissors recovered from his ex-girlfriend's home. In rejecting this claim, the Indiana Court of Appeals noted that even the absence of Smith's DNA on those items would not have been wholly exculpatory, that DNA test results may actually have strengthened the State's case, and that the evidence of Smith's guilt was quite strong. The weight of the evidence is a key consideration in conducting the prejudice inquiry under *Strickland*. 466 U.S. at 695-96. This is what the Indiana Court of Appeals considered, and neither its methodology nor its decision was an objectively unreasonable application of *Strickland's* prejudice prong.

As to each specification of attorney ineffectiveness, therefore, the Indiana Court of Appeals concluded that Smith failed to show prejudice in the manner required by *Strickland*. This conclusion is wholly in accord with the principle that "[i]t is not deficient performance to fail to raise an argument with no real chance of success." *Hough v. Anderson,* 272 F.3d 878, 898 n.8 (7th Cir. 2001). The Indiana Court of Appeals in *Smith II* "took the constitutional standard seriously and

produced an answer within the range of defensible positions." *Mendiola v. Schomig*, 224 F.3d 589, 591 (7th Cir. 2000).

Because Smith has not shown that the Indiana Court of Appeals' adjudication of this claim was an unreasonable application of clearly established federal law, or that it was based on an unreasonable interpretation of the facts, he is not entitled to federal habeas relief based on his claim of ineffective assistance of counsel.

## III. Conclusion

This court has carefully reviewed the state record in light of Smith's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. The deference due to state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Smith's habeas petition does not present such a situation.[2]

Smith's petition for a writ of habeas corpus [1] is therefore **denied.**

Judgment consistent with this Entry shall now issue.

## Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254* proceedings, and 28 U.S.C. § 2253(c), the court finds that Smith has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 08/27/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[2] Smith seeks a further expansion of the record to include a brief and a petition to transfer filed with the Indiana Supreme Court. These documents could relate to an argument concerning procedural default, of course, but the court has not found that procedural default has impeded consideration of any of Smith's claims. That request is therefore **denied**, as is Smith's request for the appointment of counsel, because on the showing of the pleadings and the expanded record it is not in the interests of justice that counsel be appointed for Smith. 18 U.S.C. § 3006A.

Distribution:

Rosheen Smith
#865326
Wabash Valley Correctional Facility
6908 S. Old U.S. Highway 41
Carlisle, IN 47838

James Blaine Martin
INDIANA OFFICE OF THE ATTORNEY GENERAL
james.martin@atg.in.gov